(No. 10918.)

The Bloomington, Decatur and Champaign Railroad Company, Defendant in Error, *vs.* The Industrial Board of Illinois *et al.*—(John E. Patterson, Admr., Plaintiff in Error.)

*Opinion filed December 21, 1916.*

1. Workmen's compensation—*when employment cannot be said to have begun at the time of injury.* A workman hired with a gang of other workmen to begin work for an interurban railway the following day or later, according to the order of the foreman, and who is at once sent with the others, by means of passes over the interurban company's line, to the bunk-house where they were to live while doing their work, and who on the same afternoon is struck by a car of the company, from which injury he died on the following morning, cannot be said to have been in the employ of the company at the time of the accident so as to entitle his administrator to recover under the Workmen's Compensation act.

2. Same—*receipt of compensation by employee hired to begin work in future does not establish a present employment.* The fact that a workman who has been hired by a railroad company to begin work in the future has received compensation in advance in the nature of transportation and a place to stay, is not evidence that he was in the present employment of the company, where he had no duties to perform and had performed none up to the time he was injured.

3. Same—*liability to be called upon at any time does not alter the contract to begin work in the future.* A workman hired with a gang of trackmen to begin work for a railroad company the following day is not in the present employment of said company under such contract, and the fact that the gang may be called upon, in case of wreck or other emergency, to begin work before the next day does not alter the situation.

Writ of Error to the Circuit Court of Macon county; the Hon. William K. Whitfield, Judge, presiding.

Redmon, Hogan & Redmon, for plaintiff in error.

Charles C. LeForgee, Thomas W. Samuels, and George W. Black, for defendant in error.

Mr. Justice Dunn delivered the opinion of the court:

This writ of error is prosecuted to reverse a judgment of the circuit court of Macon county quashing a decision of the Industrial Board awarding compensation under the Workmen's Compensation act, at the rate of five dollars per week for 416 weeks, to the plaintiff in error for the death of his intestate, Stavros Geanules, who was killed on April 17, 1914, by an interurban car of the defendant in error. The court found that the deceased was not at the time of his injury in the employ of the railroad company and that the accident resulting in his death did not arise out of or in the course of his employment. If the record of the Industrial Board contains evidence fairly tending to show that the deceased was in the employ of the railroad company and that the accident arose out of and in the course of his employment the award should have been sustained, otherwise it was properly quashed.

The testimony showed that Harry Spinos, a Greek, who had been in this country about three and a half years, working for railroad companies, and who had worked for the Bloomington, Decatur and Champaign Railroad Company the previous year, on April 16, 1914, in response to a request from Edward Eagan, the company's roadmaster, went from Decatur to Danville for the purpose of securing employment for himself and some other Greeks, of whom the deceased was one. Early the next morning he saw Eagan, who told him that he could use the men and gave him a pass to return to Decatur and another pass for himself and ten men from Decatur to Monticello. Eagan told him that he had a bunk-car between Bement and Monticello, at a place called Clark siding, and he would give the men $1.65 a day. He told Spinos to bring the men down in the regular car and go and live in the bunk-car. This was on Friday, and the men were to go to work on Saturday or Monday. Spinos returned to Decatur and told the deceased

the company wanted him to go to work and would give him $1.65 a day and a bunk-house to live in. Spinos left Decatur at 1:30 the same afternoon with a company of nine men, including the deceased, on the car going to Monticello and gave the pass to the conductor for their transportation. The party got off at Clark siding, three or four miles from Monticello, and the conductor gave Spinos a key to open the bunk-car. A few minutes later the deceased was struck by a car of the railroad company on the company's right of way and injured so that he died early the next morning in St. Mary's Hospital, at Decatur.

The men hired by Spinos were what are called extra-gang trackmen. They were to go to work on Saturday or Monday, when the foreman said to go to work. There were no tools at the bunk-house until Monday, and none of the men actually did go to work until Monday, when the foreman came. It is clear that the deceased, when injured, was not in the employ of the railroad company. He had been hired to go to work at a time in the future. In the meantime he was provided with a place to stay in the bunk-house and had been furnished transportation to that place from Decatur. He had no duties to perform, he had performed none and was not expected to perform any until Saturday or Monday. What he had received in the way of transportation and expected to receive in having a place to stay until his employment began was a part of his compensation, but the fact that he had received this compensation was no evidence that he was in the employ of the railroad company, in view of the terms of the contract that he was not to go to work until sometime in the future.

It was shown on behalf of the claimant that the extra-gang trackmen, in case of a wreck or other emergency, were liable to be called upon at any time, day or night, and that it was their duty to respond, but this fact does not tend in any way to vary the contract of employment of deceased to begin on Saturday or Monday. Cases are cited in which

276 —.16

employees have been furnished transportation to and from their work by their employers in which it has been held that they were engaged in their employment during the time of such transportation the same as if they were actually working. These cases have no bearing on the point here. They would apply if deceased had been killed after his employment had begun, while being carried to or from his work, but they do not throw any light on the question whether his employment had actually begun. The evidence clearly shows that the deceased was not, at the time he was killed, in the employ of the railroad company.

The judgment of the circuit court quashing the decision of the Industrial Board was right and will be affirmed.

*Judgment affirmed.*