[No. 20241. *En Banc.* March 28, 1927.]

JOHN BREWER, *Appellant*, v. DEPARTMENT OF LABOR AND
INDUSTRIES, *Respondent*, HOBI TIMBER COMPANY,
*Intervener and Appellant.*[1]

[1] MASTER AND SERVANT (2, 121-2)—WORKMEN'S COMPENSATION—
RELATION—EVIDENCE OF EMPLOYMENT. A logger, engaged by
written contract with an employment agency to work for a
logging company, was not an employee of the logging company,
within Rem. Comp. Stat., § 7675, of the workmen's compensation
act, defining employer and workman, where it appears that,
before starting, he submitted to questioning by, and received
"clearance" papers from, a representative of the logging com-
pany; and upon arriving at the railroad station near the log-
ging camp he presented his papers to the logging company's
watchman and the operator of a speeder, and was being taken
to the camp when the speeder collided with a train before
arriving at the place where he was to work; notwithstanding
that officers of the company testified that the "clearance"
papers constituted an acceptance and hiring of the man, where
such evidence was a mere conclusion and it appeared that
nothing was said or any final contract of employment entered
into, or that, when he arrived at the scene of the operations
he would be satisfactory to the company or the conditions and
surroundings would be satisfactory to him (MACKINTOSH, C. J.,
BRIDGES, and TOLMAN, JJ., dissenting).

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered June 30, 1926,
upon findings sustaining the refusal of the department
of labor and industries to award compensation for
personal injuries. Affirmed.

*Vance & Christensen, J. E. Stewart,* and *John C.
Hogan,* for appellants.

*The Attorney General* and *Mark H. Wight, Assist-
ant,* for respondent.

*D. V. Halverstadt, amicus curiae.*

[1]Reported in 254 Pac. 831.

MAIN, J.—This is an appeal from a judgment of the superior court affirming an order of the department of labor and industries, by which one John Brewer was denied compensation under the workmen's compensation act because, at the time of the injury, he was not an employee.

The Hobi Timber Company is engaged in the logging business in Grays Harbor county about thirty miles to the west of the city of Aberdeen. The Western Operator's Association is a corporation with its principal office in the city of Seattle and its members are logging companies which operate in the western part of the state. The Puzey Employment Agency, sometimes in the testimony referred to as the Wheeler Employment Agency, had an office in Seattle and one J. O. Wheeler was its manager. Brewer on September 11, 1925, visited the employment agency seeking employment and the following writing at the time was signed:

"PUZEY EMPLOYMENT AGENCY
"No. 2330        License No. 185.
"201 First Avenue South
"Amount of Fee $1.00        Seattle, Wash., 9-11, 1925.
"Character of Employment:    General R. R. Laborer.

"The bearer hereof, John Brewer, has this day been sent by the undersigned licensed employment agent to Hobi Timber Co. at Pacific Beach on an order received the 11th day of Sept., 1925, at wages of $4.00 per day, board, $10.50 per week, lodging $1.00 per week, fare to be paid by................Applicant.
Labor trouble, if any, not known..................

"If, without unavoidable delay, the applicant proceeds to the place of employment and said employer refuses or fails to give him employment of the character and at the rate of pay herein stated (unless operations are rendered impossible by act of God, unavoidable accident, or extreme weather conditions), the undersigned will repay to the applicant the amount of fee received, if any, and the fare, if any, paid by the applicant from Seattle to the place of employment and

return and the reasonable damage sustained by the applicant by reason of loss of time in seeking such employment. The damages herein provided for shall not exceed the wages, at the rate of pay stated in the contract, for time lost.

"If the applicant is discharged without fault on his part, unless operations are rendered impossible by act of God, unavoidable accident, or extreme weather conditions, within six (6) days the undersigned will repay the employment fee received, if any, the fare, if any, and the reasonable damages sustained by the applicant by reason of loss of time in seeking such employment, unless it is stated on the face hereof, that such employment is for a less period than six (6) days; provided however, if any adjustment is made without delay, the damages in this case shall not exceed the difference between six (6) days wages at the rate of pay stated in the contract and the amount of wages actually paid to the applicant.

"The undersigned further agrees in the event of any controversy between the undersigned and the applicant, with reference to the application herein referred to, that the entire matter will be submitted to the Labor Commission for investigation and recommendation, and no other action shall be taken until both the applicant and the employment agent have been given an opportunity to make settlement in accordance with the recommendation of the Labor Commissioner.

"The undersigned further agrees, in the event there is any delay in the settlement of any claim under this contract caused by any act or fault of the employment agent or the employer to pay to the applicant, in addition to the other amounts herein provided for, wages at the rate of pay stated in the contract for the time of such delay.

"No refund if Applicant refuses to go to job.

"I hereby consent to the above:

"John Brewer, Applicant.        FRED W. PUZEY
                        By J. W., Agent.

          "PHONE OFFICE, MAIN 6583.

"To EMPLOYERS: Under the City ordinance of the City of Seattle, Washington, we are responsible for

transportation charges and wages of men we send out when not employed. Be careful and do not order men unless you need them. Be sure to give the man the position as hired by us for you.''

After this was signed, Brewer was told to go to the office of the Western Operators' Association for what is called his ''clearance''. When he visited that office, questions were asked him as to his age, where he was born, whether he was married, where he had worked before, etc. The slip which he got from the employer's agency was stamped ''cleared''. He then went to a hotel for the night and the following morning took the boat to Tacoma, then by Northern Pacific Railway went to a point west of Aberdeen, where the spur track of the logging company meets the railroad. The camp was thirteen miles distant. When Brewer got there at about four o'clock in the afternoon, he showed his clearance to the watchman who told him to wait until what is referred to as the speeder, which was a gasoline car, should arrive to take him to the camp. At about seven o'clock, the speeder came, and he presented his clearance to the operator of the car who told him to take the speeder. Shortly before the speeder pulled out, a logging train had started into the camp. When the speeder was about a quarter of a mile distant from the Northern Pacific track, it collided with the rear end of the logging train, with the result that Brewer was seriously injured. Thereafter he presented a claim to the department of labor and industries which, as above stated, was rejected. He then appealed to the superior court with the result that his claim was there denied. From that judgment, the case is brought to this court by appeal.

[1]    The question involved is whether Brewer was an employee of the Hobi Logging Company at the

time he was injured. Rem. Comp. Stat., § 7675 [P. C. § 3470], which is one of the sections of the workmen's compensation act, in part provides:

"Employer means any person, body of persons, corporate or otherwise, and the legal personal representatives of a deceased employer, all while engaged in this state in any extrahazardous work or who contracts with another to engage in extrahazardous work. Workman means every person in this state, who is engaged in the employment of an employer coming under this act whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer: . . ."

Whether Brewer was an employee, depends upon whether there was a complete and final contract of employment before he left Seattle. To constitute such a contract, it would have been necessary for the Hobi Logging Company to have bound itself unreservedly, either by word or act, to accept and pay for the services of Brewer and he must have bound himself unreservedly, either by word or act, to perform the labor required. In *Moore & Gleason v. Taylor,* 97 Okl. 193, 223 Pac. 611, the question arose whether one J. M. Taylor was under the workmen's compensation law of the state of Oklahoma. It was there said:

"Petitioners take the position that Beal was an independent contractor and that Taylor was an employee of Beal and not of Moore & Gleason, and in support of their contention cite excerpts from the testimony of respondent Taylor, wherein he states that he was employed by Beal, that he was not personally acquainted with either Moore or Gleason, and substantially sustains the contention of petitioners so far as the facts are concerned. Petitioners call attention to the case of *Hogan v. Commissioners,* 86 Okl. 161, 207 Pac. 303, wherein that court said:

" 'The relation of employer and employee is con-

tractual. Like every other contractual relation, it is the product of the meeting of the minds.'

"And cites *Western Union Tel. Co. v. Northcutt,* 158 Ala. 539, 48 South. 553, 132 Am. St. Rep. 38; 18 R. C. L. 490.

" 'To create the relation of employer and employee there must be an express contract, or such acts as will show unequivocally that the parties recognize one another as master and servant. 18 R. C. L. 493.' "

In *Wells v. Clark & Wilson Lumber Co.,* 114 Ore. 297, 235 Pac. 283, with reference to the essentials of a contract which would place one under the workmen's compensation act, it was said:

"Numerous authorities are cited by appellant to the effect that an employee going to or returning from his work or going to the place where he is employed to perform labor is 'acting in the course of his employment,' and is subject to the provisions of the Workmen's Compensation Act. This is sound law. But before it can be applied there must exist a complete contract of employment; that is, the person sued as an employer must have bound himself unreservedly, either by word or act, to accept and pay for the services of the applicant, and the applicant must have bound himself unreservedly, by word or act, to perform the required labor. As before remarked, the plaintiff did not, by accepting the employment slip from the agency in Portland, or by accepting the free pass over defendant's railroad from Nehalem Junction to the logging camp, enter into a contract to serve defendant as a waitress. The expedition so far was tentative, and depended upon the further contingency that upon her arrival at the scene of the proposed labor she should appear satisfactory to the defendant, and that the conditions and surroundings under which the proposed labor should be performed should be satisfactory to her."

That case, in its facts, is very similar to the one now before us, except in one particular. There, the one seeking employment went directly from the employ-

ment agency to the place of employment and was injured. Here, after leaving the employment agency Brewer went to the Western Operators' Association for his clearance. Whether this is a material difference will be hereinafter considered.

In *Susznik v. Alger Logging Co.*, 76 Ore. 189, 147 Pac. 922, the plaintiff applied to the Evans Employment Company of Portland for a job as wood-chopper. He was given what is referred to as a "ticket" or "employment ticket", which appeared upon its face to be a contract between the plaintiff and the employment bureau whereby the latter was to find employment or refund the fee of one dollar which the plaintiff paid therefor. In pursuance of the instructions given him, the plaintiff took the ticket to the office of the defendant corporation in the city of Portland, where he presented the same, and under its instructions took the steamboat to Skamokawa, Washington. He there placed himself and baggage upon the pilot of the locomotive which moved backward pushing defendant's logging cars from the river to the logging camp. Shortly after reaching the logging camp, he was injured. The question was whether the plaintiff was an employee and the defendant an employer within the workmen's compensation act of the state of Oregon at the time of the injury, and it was held that that relation had not been established. In all essential particulars the facts of that case are the same as the one now before us.

Upon the trial in the superior court, one or two of the officers of the Hobi Logging Company, as well as the manager of the Western Operator's Association in Seattle, testified that the employment was complete when the clearance was made, and that that act constituted an acceptance of the applicant as an employee. One of the officers of the logging company,

when asked the direct question as to where Brewer was hired, said: "At the Wheeler Employment Agency in Seattle". The manager of the Western Operator's Association who testified that the clearance meant an acceptance was not present when Brewer presented himself for the clearance and the person with whom he talked was not called as a witness. As to what took place at this time, Brewer's testimony is not very satisfactory. He apparently was a witness who was inclined to answer leading questions as the examiner desired. In response to a leading question by counsel for the Hobi Logging Company, he said that at the time he was told "All right, you are hired". Later, when being examined by counsel for the department of labor and industries, he testified:

"You went in there and handed him this ticket? A. Yes. Q. And he took it and stamped something on the back of it? A. Yes. Q. Did he say anything? A. No, sir, not anything."

He later testified that he was asked questions as to his age, place of birth, etc., as already indicated. The fact that the officers of the logging company as well as the manager of the Western Operators' Association, testified in effect that the employment was complete when the clearance was made is not necessarily controlling. That was the conclusion of the witnesses as to the effect of what had been done, or their opinion as to the legal effect. The primary purpose of the Western Operators' Association, as appears from the testimony, in requiring the slip to be stamped "cleared", was to permit that association to inquire into the character, reputation and fitness of the applicant for the particular work to be done and to prevent what is referred to as "undesirables" getting employment in the logging camps. It cannot be said that the employment slip which Brewer received from

the employment agency constituted a contract of employment. On its face it indicates otherwise. There is no evidence that the terms or conditions of the employment were discussed with the representative of the Western Operators' Association at the time Brewer's slip which he received from the employment agency was stamped cleared. It is our opinion that the relation of employee and employer had not been established. As pointed out in *Wells v. Clark & Wilson Lumber Co., supra,* there was the further contingency that Brewer, when he arrived at the scene of the operations, should appear satisfactory to the Hobi Logging Company and that the conditions and surroundings under which the labor should be performed would be satisfactory to him. There is no claim that either the watchman at the spur or the operator of the speeder had any authority to employ men.

We have not considered the question whether the Hobi Logging Company, not having appealed within the time fixed by statute from a decision of the department of labor and industries, had a right thereafter to intervene in the superior court and become a party to the action, for the reason that the case is here upon its merits by Brewer's appeal. Upon the ruling of the trial court in permitting the intervention we express no opinion.

The judgment of the superior court affirming the order of the department of labor and industries will be affirmed.

MITCHELL, FULLERTON, PARKER, ASKREN, and FRENCH, JJ., concur.

MACKINTOSH, C. J., BRIDGES, and TOLMAN, JJ., dissent.