HANSON, Appellant, v. FAIRBANK, et al, Respondents.

(269 N. W. 735.)

(File No. 7958.   Opinion filed November 16, 1936.)

*T. R. Johnson,* of Sioux Falls, for Appellant.

*Bailey, Voorhees, Woods & Bottum,* of Sioux Falls, for Respondent.

RUDOLPH, J.   The appellant, Edward Hanson, was employed as a janitor in the Boyce-Greeley building in Sioux Falls, S. D., and the Workmen's Compensation Law of this state (Rev. Code 1919, § 9436 et seq., as amended) was applicable to such employment.   The owners of the Boyce-Greeley building had insured their liability to their employee under that law with the

American Casualty Company, a respondent herein. The appellant claims that, while engaged in the course of his employment, he suffered a heatstroke or heat exhaustion, and a few days later an electric shock which has resulted in a physical and mental condition which appellant claims is permanent and for which he seeks to recover on the basis of a permanent disability. The evidence submitted at the hearing on behalf of appellant was to the effect that the alleged heat exhaustion and electric shock occurred during the months of June and July, 1933. The industrial commissioner found the facts to be, as follows:

"5. That prior to June and July, 1933, the claimant had suffered two nervous breakdowns, one of which was suffered in 1909 and one in 1928.

"6. That claimant did not suffer a heat stroke or an electric shock at the time or times claimed by him or at any other time while in the employ of the defendants.

"7. That the disability of the claimant was not caused by an accident arising out of or in the course of the employment of the said claimant by the defendant employers, A. B. Fairbank, Executor of the Estate of Etta Estey Boyce, deceased, and Eva R. Greeley, Administratrix of the Estate of George T. Greeley, deceased, but that his disability is the result of a recurring nervous breakdown which is in no way related to the employment of the claimant and which did not arise out of the employment of the claimant by the employers. * * *"

On an appeal to the circuit court from the industrial commissioner's order denying a review, the circuit court affirmed the decision of the industrial commissioner. This is an appeal from the judgment and order denying the motion for a new trial.

In view of the commissioner's findings above set out the principal issue in this case, and the decisive issue so far as this appeal is concerned, is the sufficiency of the evidence to support these findings.

■ ■ Appellant's case is predicated upon the two grounds: First, that he did in fact suffer a heatstroke and electric shock; second, that his present condition is due to the effects of either or both the heatstroke and electric shock. The burden was upon the appellant to establish both grounds and if he failed in either he,

of course, cannot be successful in this proceeding. The evidence in our opinion is sufficient to support the finding of the commissioner to the effect that the appellant failed to meet his burden of proving either of the claimed injuries. It therefore becomes unnecessary for us to consider the further finding that the present condition of appellant is due to a recurring nervous breakdown, although we might say that a careful review of this evidence convinces us that this finding is supported by the record.

Appellant testified that during the latter part of June, 1933, he worked in the attic of the Boyce-Greeley building, that the weather was extremely hot, and that he at that time suffered a heatstroke or heat exhaustion. The appellant's wife and daughter corroborated this testimony of the heatstroke to the extent that they testified that appellant complained of a ringing in his head, and that he didn't eat or sleep very well during the last days of June and the first days of July, 1933. On July 8, 1933, appellant claimed to have suffered an electric shock while working in the basement of the building. It is undisputed that on July 8th appellant was taken to the hospital and there received treatment by a Dr. Day, and returned to his home the following day, after which time, until at least the month of April, 1934, he was totally incapacitated from work because of a nervous condition. The employer on July 10, 1933, made a statement to the insurer which set forth the disability of appellant and stated the cause thereof as being "overheated while taking off muresco from the walls on an inside room."

Thereafter the insurer paid the appellant compensation until the month of April, 1934, when insurer's doctor reported appellant as recovered from his disability. On the other hand the evidence discloses that at the time in question the appellant worked in the attic only from one-half to three-quarters of an hour, and that during that period of time he was in and out several times, that appellant and the man with whom he worked perspired freely, and, after completing the attic job, he complained to no one of suffering any ill effects on account of the work. His fellow employee with whom he was working testified that he observed nothing unusual or unnatural about appellant's appearance at the time. The work in the attic was on the 26th or 27th day of June, and appellant performed his usual tasks in and around the building until July

8th. On this last date appellant claims to have suffered the electric shock.

Appellant testified that on July 8th, while working in the basement with some floor mops, he received this electric shock from an electric light socket hanging in the basement. One G. E. Cooley was present in the basement at the time and testified that the appellant groaned and "fell into my arms." Cooley testified that he took appellant outdoors and stayed with him about 15 minutes, at which time the appellant had fully regained consciousness and said he was all right. No doctor was called by Mr. Cooley. At the time the appellant claims to have received the electric shock Mr. Cooley's back was turned, and all Mr. Cooley knows of what happened is that he heard "a groan and a snap." Appellant contends that the electric socket and the electric wires were defective, but all other witnesses engaged in working in the building testified that there was nothing wrong with the electric wires. Appellant did not complain of an electric shock to the man, a Mr. Sigler, with whom he was working and who testified as follows: "He said he was sick. He did not mention an electric shock. Never said a word. That was July 8. He said he was going to get a cup of coffee and that is the last time I saw him."

The record shows, as found by the commissioner, that in 1909 and in 1928 appellant had had nervous breakdowns similar to that which he now suffers. Apparently some physical disturbance occurred to appellant at the time he was with Mr. Cooley in the basement, but the record is not such, in our opinion, that it compels a finding that appellant's trouble at that time was caused by an electric shock. Neither does the record compel a finding in our opinion that appellant suffered a heatstroke or heat exhaustion while working in the attic on the 26th or 27th of June. The testimony of doctors discloses that a person suffering a heatstroke or heat exhaustion becomes immediately ill and shows some immediate effect. Appellant worked almost two weeks after the claimed heatstroke or heat exhaustion, with no effect apparent to those with whom he was working. The report made by the employer to the insurer was made by one Hobson, manager of the building. Mr. Hobson testified that on July 8th, the date appellant became ill, appellant had been murescoing certain rooms in the

building, that he was told that appellant's trouble was due to being overheated, and that he took it for granted that he was overheated while doing the muresco work. · Appellant contends that this report of the employer is prima facie evidence of the facts therein stated. Conceding this contention for the purposes of this case, we, nevertheless, think it clear that the facts as now disclosed are sufficient to overcome any prima facie effect of this report. It is appellant's present contention that he was overheated while working in the attic some two weeks prior to the date of his quitting work. This report would indicate, if it indicates anything in view of Mr. Hobson's testimony, that the appellant was overheated on the date he was taken to the hospital and while murescoing certain rooms in the building, which is even contrary to appellant's present contention. Clearly, it seems to us, there is nothing in this record upon which this court can reverse these findings of the commissioner.

As stated in the case of Edge v. City of Pierre, 59 S. D. 193, 239 N. W. 191, 194: "The trial forum for ascertaining material facts is the board of arbitration or the industrial commissioner when such board is waived, and facts so found must be accepted by the reviewing court, unless so palpably erroneous upon the record as to be·unreasonable; such findings standing substantially upon the same plane as the verdict of a jury."

The judgment and order appealed from are affirmed.

All the Judges concur.