ISAACSON, Appellant, v. NORTHERN WHOLESALE
COMPANY, et al, Respondents ·

(293 N. W. 532.)

(File No. 8370.   Opinion filed August 16, 1940.)

**Davenport & Evans** and **Louis Hurwitz,** all of Sioux Falls, for Appellant.

**Tom Kirby,** of Sioux Falls, for Respondents.

WARREN, J.  This appeal involves the refusal to grant a workmen's compensation award to appellant, who seeks to reverse the holding of the Circuit Court affirming the action of the Industrial Commissioner.

The questions involved are whether the deceased husband of appellant was an employee of the defendant, Northern Wholesale Company, at the time of his death, and whether the accident causing his death arose out of and in the course of his employment.

The respondent, Northern Wholesale Company, a South Dakota corporation, is engaged in wholesaling liquor, with its principal place of business at Aberdeen.  As a vacancy was about to occur in their Sioux Falls territory, Mr. Voss, general manager of the Northern Wholesale Company, on the 6th or 7th of October, 1936, telephoned to Morris Isaacson, who had had previous experience as a liquor salesman, regarding a conference at Aberdeen, South Dakota, with reference to Mr. Isaacson filling the expected vacancy in the Sioux Falls territory.  Mr. Voss. agreed to pay the expenses of the trip for the interview.

October 8, 1939, Isaacson met Voss in Aberdeen and the terms of employment were agreed upon.  Isaacson was to commence work Monday morning, October 12th, replacing John Gaffney, respondent's employee in the Sioux Falls territory, who was to cease work Saturday night, October 10th.  Isaacson was to receive a commission on all sales made by him, and a specified salary per week for the first four weeks, beginning Monday, October 12, 1936.  Isaacson was given $60 for expenses at this time.  Voss gave Isaacson instructions as to the work and what he was to do.  The merchandise he was to handle consisted of liquors and wines.  Forty bottles of assorted liquors to use as samples and also a price list and various other supplies, including literature, etc., were turned over to him at Aberdeen, South Dakota.  Sometime October 9th Isaacson left Aberdeen.  At about 11:30 o'clock in the forenoon of Saturday, October 10th,

Mr. Isaacson's automobile was struck by a train and he was killed at a point where U. S. Highway 77 crosses the Chicago, Milwaukee, St. Paul & Pac. Ry. tracks, about a mile east of the town of Colman, in Moody County, South Dakota, upon the usual highway traveled between Aberdeen and Sioux Falls, South Dakota. Appellant is his surviving wife and was dependant on him for support.

■ The Industrial Commissioner refused to grant compensation, and on a petition for review and rehearing the relief was denied. The matter was heard in the Circuit Court of Moody County after change of venue had been ordered. The Circuit Court entered a judgment affirming the Industrial Commissioner. Upon the appeal from the Circuit Court judgment, the respondent contends that in as much as appellant's appeal from the Industrial Commissioner was to the Circuit Court of Minnehaha County and not to the Circuit Court of either Moody or Brown County there was no jurisdiction. Respondents base their contention on Section 9489, R. C. 1919, authorizing an appeal from the Industrial Commissioner to the Circuit Court of the county in which the principal business of such employer is transacted or at the option of the employee to the county where the injury occurred. Supreme Court Rule number 3, which was in effect at the time, is also cited. Without citing further authorities we must dismiss respondent's contention, basing the dismissal upon the well considered case of Lytle v. Smith et al., 50 S. D. 637, 211 N. W. 450. The reasoning therein seems to cover the situation and the questions raised by the respondent from every angle in its prayer for a dismissal of the appeal for want of jurisdiction.

■ We agree with the appellant that the relationship of master and servant or employer and employee is a contractual relationship created by either an express or implied contract. We will go further and admit that it is undisputed that the contract for a specified commission and a salary was entered into, and that a working territory was assigned to the deceased, and that the deceased at the time that he met with his death was carrying price lists and certain merchandise, and a collection list belonging to the to-be

employer, and also that the expenses of the trip had been advanced.

■ The decision of the Industrial Commissioner upon the fact questions will be sustained as there is reasonable, credible, and substantial evidence tending to establish the findings. Jacobson v. Strong et al., 66 S. D. 552, 558, 287 N. W. 41, 44; Hanson v. Fairbank et al., 64 S. D. 643, 269 N. W. 735.

■ As we understand the single issue before us, there was an agreement reached at Aberdeen that the deceased was to work for respondent Wholesale Company in this specific territory known as the Sioux Falls territory, employment to start Monday, October 12, 1936, and it would seem that their then representative should terminate his employment on Saturday evening, the 10th, and turn in his portfolio papers and samples to Isaacson. The deceased concededly was merely on his way to take over the territory of a retiring company - employee. There are cases to the effect that it is not intended by compensation acts that employers who come within its provisions shall be the insurers of their employees at all times during the period of the employment. From that analogy it might be assumed that such a rule would apply to the prospective employee on his way to take up his work. We, however, prefer to put our decision upon a line of authorities that compensation cannot be recovered for the reason that the accident did not occur in the course of the employment, in that the period of employment had not as yet commenced. This to us seems sound, as there are elements in this case upon which this statement may be bottomed. The facts are much different and this case is easily distinguishable from Leach v. J. I. Case Threshing Machine Co., 53 S. D. 13, 219 N. W. 884, 886, one of the cases relied upon by appellant. In that case the deceased had been an employee of the company as a salesman for some time. We refer to this statement in the opinion, "he had company papers with him, and was apparently equipped to serve the company in due course of the trip." In the present case the deceased had papers and samples with him, but he could not serve the company in

due course of the trip. He would not be permitted to take orders until on Monday, the 12th. He had not even reached the assigned territory at the time the train crashed into him. The facts in the instant case are somewhat comparable to language in Coco v. Wilbur, 104 N.J.L. 275, 140 A. 790, 791, and we quote:

"The services for which he had been hired were to commence two days later. The situation is no different, as we view it, from the case of one living in San Francisco, and entering into a contract to work for one engaged in business in the city of Trenton by which the employee is to enter the service of his employer on a certain date. In order to enter the employment, the man from San Francisco comes to Trenton, and, before the day the contract of employment is to commence, he is accidentally shot. Can it be said that such an accident occurred in the course of the employment? **We think not, for the reason that the period of employment had not as yet commenced.** The deceased in the instant case was in the same position as one who receives injuries when going to his place of employment. A case in point is that of Whitehead v. Arnold, 99 L. T. 103. The facts shown by this case were that a man entered into a contract with a farmer to serve as a shepherd as from October 22, 1907. It was part of the contract that the farmer should send a wagon to the home of the shepherd to bring him and his family and their goods to their new home. While proceeding to their new home in this wagon, and about a distance of 40 yards from the cottage to be occupied, the wagon was suddenly jerked. The shepherd was thrown out and received fatal injuries. It was held that the death of the shepherd did not arise out of or in the course of employment, as his employment had not commenced. \* \* \*

"In the present case we consider that the deceased was not at the time of the accident in the employ of the respondent; that he was performing no work for the respondent; **that the accident did not occur at the cranberry bogs where the deceased was engaged to work; that the accident did occur while he was engaged in his own pursuits; \* \* \*"** (Emphasis ours)

In Bloomington, D. & C. R. Co. v. Industrial Board et al., 276 Ill. 239, 114 N. E. 517, the court likened the reasoning of transportation the same as though a part of the compensation had been advanced (as in the instant case) and held that he was not an employee of the company as he was not to go to work until some time in the future: "It is clear that the deceased, when injured, was not in the employ of the railroad company. He had been hired to go to work at a time in the future. In the meantime he was provided with a place to stay in the bunkhouse and had been furnished transportation to that place from Decatur. He had no duties to perform; he had performed none, and was not expected to perform any until Saturday or Monday. What he had received in the way of transportation and expected to receive in having a place to stay until his employment began was a part of his compensation, but the fact that he had received this compensation was no evidence that he was in the employ of the railroad company, in view of the terms of the contract that he was not to go to work until some time in the future."

The Coco v. Wilbur case is cited as authority in The Linseed King, D.C., 48 F.2d 311, 319, as follows: "There is still a third group of men who had applied for employment several days prior to December 20th, had been given slips of paper with numbers, and had been told to report for work on December 19th, to unload a ship. These men had reported on December 19th, as instructed. They were then told that the ship had not arrived and that they should return for work the next day. They were returning when the disaster happened. They had done no work and had earned no compensation. The commissioner held that these men were employees. I do not agree. In my opinion, the status of employer and employee had not yet come into existence, and the compensation statute does not apply to these cases. Coco v. Wilbur, 104 N.J.L. 275, 140 A. 790, seems indistinguishable."

Wells v. Clark & Wilson Lumber Co., 114 Or. 297, 235 P. 283; Brewer v. Department of Labor & Industries (Hobi Timber Co., Intervener), 143 Wash. 49, 254 P. 831; Sabella

et al. v. Brazileiro, 86 N. J. L. 505, 91 A. 1032; Fineberg v. Public Service Ry. Co., 94 N. J. L. 55, 108 A. 311.

In the instant case the agreement for the deceased's expenses to make the trip to Aberdeen and return was made by telephone, and he was to receive his expenses whether he was hired or not.

The agreement was made to take on a definite territory known as the Sioux Falls territory and that he was to commence Monday, October 12th, when the other employee would vacate. He met his death near Colman, Moody County, some 40 miles north of the territory he expected to take over. We therefore feel that the line of authorities we have cited and from some of which we have quoted are squarely in point and that our compensation statutes, liberal as they are, cannot cover the situation before us.

We are not impressed with appellant's argument that there is a conclusive reason that the trip must be termed to have been made in the course of Mr. Isaacson's employment because of the fact that the Northern Wholesale Company delivered to him 40 bottles of assorted liquors and wines to take with him to Sioux Falls and will therefore not devote any space to a discussion thereof.

The order and judgment appealed from are affirmed.

All the Judges concur.